### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENZABAR, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 08-11117 NMG |
| CAMPUS MANAGEMENT CORPORATION, | |
| Defendant. | |

### PLAINTIFF JENZABAR, INC.'S FIRST AMENDED COUNTERCLAIMS

Plaintiff, Defendant-in-Counterclaim, and Counterplaintiff, Jenzabar, Inc. ("Jenzabar") hereby asserts the following amended counterclaims against the Defendant, Campus Management Corp. ("CMC"):

### FACTUAL ALLEGATIONS

**For More Than 20 Years, Jenzabar Has Offered
Campus Management Software, And For the Past Five Years
It Has Been Using Its TOTAL CAMPUS MANAGEMENT Mark**

1.      Jenzabar provides enterprise and administrative software solutions to educational institutions.  Jenzabar's software and services are widely used by institutions of higher education for managing their campuses and conducting administrative functions, such as admissions, financial aid, course registration and development, e-learning, and fundraising.

2.      Enterprise administrative software like that offered by Jenzabar is, and has long been, commonly known as campus management software.

3.      Jenzabar (including its predecessors in interest) has been offering campus management software and services in interstate commerce for over twenty years.

1

4.      Since at least as early as November 2003, Jenzabar has owned and used the TOTAL CAMPUS MANAGEMENT mark in conjunction with its software offerings and services.

5.      Jenzabar's TOTAL CAMPUS MANAGEMENT mark is a clever play on the ubiquitous catchphrase "total quality management," also known as "TQM."  According to the International Standards Organization ("ISO"), total quality management "is a management approach for an organization, centered on quality, based on the participation of all its members and aiming at long-term success through customer satisfaction, and benefits to all members of the organization and to society." ISO 8402:1994.

6.      The TOTAL CAMPUS MANAGEMENT mark has been duly registered with the Commonwealth of Massachusetts, Massachusetts Reg. No. 67066, for use in connection with computer consulting services in the field of design, selection, implementation and use of computer software and hardware systems for others.

7.      Jenzabar has invested substantial time, effort and money in advertising, marketing and promoting its software and services under the TOTAL CAMPUS MANAGEMENT mark. As a result, over the past five years the mark has become well-known to the relevant consumers and associated with Jenzabar and its software solutions and services.

**After Wrongfully Hiring Jenzabar Employees,**
**CMC Began A Campaign Of Illegal And Unethical Conduct Toward Jenzabar**

8.      CMC is a competitor of Jenzabar.

9.      In April 2002, Mahendran Jawaharlal, a former senior executive at Jenzabar with intimate familiarity with Jenzabar's proprietary technical and business information, left Jenzabar and joined a competitor, then known as SCT/Sungard, in violation of his noncompetition obligations to Jenzabar.

10.     In a preemptive measure, Jawaharlal filed suit in Ohio against Jenzabar, seeking a declaration that he had been relieved of his noncompete obligations. The Ohio court rejected his claim and in September 2003 ruled in favor of Jenzabar.

11.     Jawaharlal importuned Jenzabar to accept a judgment, representing to both Jenzabar and the Ohio court that he was unemployed and had no job prospects.

12.     Only a few weeks later, on October 1, 2003, Jawaharlal joined CMC as president of the company.  Upon information and belief, given the high-level position he accepted with CMC, Jawaharlal had already been engaged in negotiations with CMC at the time he represented to the Ohio court that he had no job prospects.

13.     After hiring Jawaharlal, CMC began to engage in unethical, wrongful, and illegal conduct toward Jenzabar.

14.     With Jawaharlal's active involvement and the use of Jenzabar's confidential information, CMC wrongfully solicited and hired at least three former Jenzabar employees, including Jack Elcik, Walter Laskarzewski, Ed O'Donnell, and perhaps others.

15.     CMC hired these individuals with knowledge of their noncompete and nondisclosure obligations to Jenzabar, which it caused them to breach, for the purpose of gaining access to Jenzabar's confidential and competitively sensitive information, particularly customer information and Jenzabar's product development plans.

16.     In fact, Laskarzewski and O'Donnell specifically used Jenzabar's confidential information to contact Jenzabar clients and disparage Jenzabar to them.

### CMC Obtained Its Trademark Registrations By Fraud, Failing To Disclose Widespread Use of "Campus Management" As A Generic Term And Submitting False Affidavits Claiming Exclusive Rights To The Phrase

17.     CMC has similarly engaged in unethical, fraudulent, and illegal activity in connection with the trademarks that it now seeks to assert against Jenzabar.

18.     In its marketing materials and on its website, CMC claims to have been founded in 1988 (see http://www.campusmgmt.com/company/company.asp).  In fact, according to the filings with the Florida Secretary of State's office, the corporation now known as CMC was formed on August 10, 1994.  At the time it was known as "Corporate Data Systems, Inc."  The corporation changed its name to CMC by a filing with the Florida Secretary of State dated October 2, 1995.

19.     The phrase "campus management" is generic and merely descriptive of the services provided by both Jenzabar and CMC, as well as by many others in the educational field.

20.     Nevertheless, in September 2003 CMC filed applications for federal registrations for CAMPUS MANAGEMENT CORP, despite the fact that the mark is generic and merely descriptive of the services and software provided by CMC.

21.     The Patent and Trademark Office ("PTO") initially rejected CMC's applications, on the ground that they were merely descriptive of CMC's offerings.

22.     In response, CMC acknowledged that the marks were descriptive of campus management services.  CMC argued instead that the phrase "campus management" was so broadly descriptive that it encompassed all types of campus management services, and was not understood to apply to campus management software.

23.     CMC further responded by submitting declarations signed by David Meek, CMC's president and chief executive officer, in which he swore that "the 'CAMPUS MANAGEMENT CORP' trademark has become distinctive of the goods through Campus Management Corp's substantially exclusive and continuous use in commerce since 1995."

24.     Meek's declarations were false.

25.     CMC deliberately, and with fraudulent intent, failed to disclose to the PTO that the phrase "campus management" was generic and was widely used by many in the educational technology field, including Jenzabar, to describe enterprise and administrative software and related services.

26.     In addition, with deceptive intent and over an extended period of time, CMC deliberately used the federal registration symbol ® in connection with the phrase "campus management" on its website and in other marketing materials, despite that CMC had neither sought nor obtained a federal registration that covered this phrase.

27.     CMC's use of the federal registration symbol ® in connection with the phrase "campus management" was unauthorized, deceptive, and illegal, in violation of 15 U.S.C. § 1111.

28.     As a result, the PTO ultimately issued U.S. Trademark Registration Nos. 2,965,722 ("the '722 Registration") and 3,259,702 ("the '702 Registration") covering Campus Management's marks.

29.     Starting in the spring of 2005, not long after Jawaharlal became its president, CMC began harassing Jenzabar for its use of the TOTAL CAMPUS MANAGEMENT mark and the phrase "campus management" to describe its software, goods, and services.

30.     On June 8, 2005, Campus Management sent a letter to Jenzabar, insisting that Jenzabar cease its use of the TOTAL CAMPUS MANAGEMENT mark and the phrase "campus management," and threatening immediate legal action for infringement.

31.     By this time, Jenzabar had been using the TOTAL CAMPUS MANAGEMENT mark for nearly two years without complaint from CMC.

32.     Within one week of receiving CMC's demand letter Jenzabar responded in good faith, on June 15, 2005, explaining that CMC's marks were generic, descriptive, and not infringed.

33.     CMC did not take any action to follow up on its threats, and more than three years passed.

34.     During that time, in reliance on CMC's silence, inaction, and acquiescence, Jenzabar continued to advertise and promote its software offerings and services using the TOTAL CAMPUS MANAGEMENT mark and the phrase "campus management." As a result of Jenzabar's significant investment of money and resources, its TOTAL CAMPUS MANAGEMENT has become well-known in the marketplace and strongly associated with Jenzabar and its software and services.

35.     Then, on June 24, 2008, CMC sent a new demand letter, again claiming that it had the exclusive right to the generic phrase "campus management," and again demanding that Jenzabar cease using the TOTAL CAMPUS MANAGEMENT mark and the phrase "campus management."

36.     Jenzabar has a valid and legal right to describe its software, goods, and services by use of the TOTAL CAMPUS MANAGEMENT mark and the phrase "campus management."

37.     In addition, Jenzabar's use of TOTAL CAMPUS MANAGEMENT poses no significant risk of consumer confusion. Among other reasons, Jenzabar uses TOTAL CAMPUS MANAGEMENT as a tag line or slogan in conjunction with its other marks. The '722 and '702 Registrations cover CMC's corporate name and do not correspond to any particular product or service CMC offers.

38.    The products and services offered by Jenzabar and CMC, moreover, are complex enterprise software systems that are marketed to sophisticated purchasers, who often conduct months-long procurement processes in which both Jenzabar and CMC submit proposals.  There is, simply put, no realistic risk of confusion.

39.    The lack of confusion is further evidenced by the fact that Jenzabar and CMC have coexisted and competed for nearly five years without confusion.

40.    CMC's conduct demonstrates its awareness that Jenzabar's use of TOTAL CAMPUS MANAGEMENT does not pose any real risk to CMC.  It waited nearly two years before sending its first cease and desist later, then waited an additional three years before sending its second.  CMC has never followed up its threats with action.  CMC has, rather, acquiesced in Jenzabar's use of TOTAL CAMPUS MANAGEMENT.  CMC's latest threat is just another attempt to disrupt Jenzabar's business by creating doubt and uncertainty.

41.    Notwithstanding these facts, when Jenzabar filed this action, CMC chose to file counterclaims against Jenzabar, further attempting to disrupt Jenzabar's business despite the lack of merit of these claims.

42.    Jenzabar is likely to be damaged if CMC is permitted to assert the '722 and '702 Registrations against Jenzabar, or otherwise impair Jenzabar's use of the descriptive phrase "campus management" in its TOTAL CAMPUS MANAGEMENT mark, in which Jenzabar has legitimate rights and has made a substantial investment, including but not limited to by assertion of its counterclaims and its continuing vague (and unfounded) threats of infringement.

## COUNT III

### Violation of the Lanham Act – Federal Unfair Competition (17 U.S.C. § 1125(a))

43.     Jenzabar restates and re-alleges all of the allegations contained in Paragraphs 1 through 25 of its Complaint and Paragraphs 1 through 42 of this Counterclaim as if fully set forth herein.

44.     CMC has falsely misrepresented its rights to the generic and merely descriptive "campus management" language, and CMC has wrongfully attempted to register the '722 and '702 Registrations and subsequently to prevent others, including Jenzabar, from using the generic and merely descriptive "campus management" language.

45.     CMC has used vague threats and its counterclaim in this action to disrupt Jenzabar's business despite the lack of merits of these claims.

46.     CMC's conduct, as described herein, constitutes unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Unless enjoined by this Court, CMC will continue to do the acts complained of herein and continue to cause damage and injury, all to Jenzabar's irreparable harm, for which Jenzabar has no adequate remedy at law.

## COUNT IV

### Tortious Interference with Contractual Relations

48.     Jenzabar restates and re-alleges all of the allegations contained in Paragraphs 1 through 25 of its Complaint and Paragraphs 1 through 47 of this Counterclaim as if fully set forth herein.

49.     As described above, CMC has knowingly and intentionally interfered with Jenzabar's contractual relationships with its customers, employees, and former employees.

50.     CMC's interference was improper in motive and/or means.

8

51.     As a result of CMC's interference, Jenzabar has sustained substantial damages.

## COUNT V

### Tortious Interference with Advantageous Relations

52.     Jenzabar restates and re-alleges all of the allegations contained in Paragraphs 1 through 25 of its Complaint and Paragraphs 1 through 51 of this Counterclaim as if fully set forth herein.

53.     As described above, CMC has knowingly and intentionally interfered with Jenzabar's advantageous relationships with its customers and potential customers.

54.     CMC's interference was improper in motive and/or means.

55.     As a result of CMC's interference, Jenzabar has sustained substantial damages.

## COUNT VI

### Massachusetts Unfair and Deceptive Trade Practices and Unfair Competition
### (Mass. Gen. L. ch. 93A, §§ 2 and 11)

56.     Jenzabar restates and re-alleges all of the allegations contained in Paragraphs 1 through 55 of its Complaint and Paragraphs 1 through 19 of this Counterclaim as if fully set forth herein.

57.     At all times relevant to this Counterclaim, both CMC and Jenzabar were engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§ 2 and 11.

58.     CMC's unfair or deceptive acts or practices, as described herein, include the following:

        a.     CMC has falsely misrepresented its rights to the generic and merely descriptive "campus management" language to the public and to the United State Patent and Trademark Office; and

b.      CMC has asserted its fraudulently obtained '722 and '702 Registrations against Jenzabar and others in an effort to prevent Jenzabar from using the generic and merely descriptive "campus management" language to describe their products and services.

c.      CMC has threatened Jenzabar with its Registrations in an effort to disrupt Jenzabar's business, despite knowing that it had no legitimate right to do so.

d.      CMC has intentionally interfered with Jenzabar's contractual relationships with its employees and former employees to obtain Jenzabar's confidential information, and then used that confidential information to interfere with Jenzabar's relationships with its employees, customers, and potential customers.

59.     Jenzabar has suffered irreparable harm, the loss of money, and damage to its reputation and goodwill as a result of CMC's employment of unfair methods of competition and unfair or deceptive acts of practiced described herein in trade or commerce in violation of M.G.L. c. 93A §§2 and 11, and CMC's conduct will likely continue to cause future damages and irreparable harm for which Jenzabar has no adequate remedy at law.

60.     CMC's unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts for the purposes of M.G.L. c. 93A, § 11, because, among other things, CMC's threatening letters were sent to Jenzabar in Massachusetts and the harm resulting to Jenzabar has been and will be suffered in Massachusetts where Jenzabar is located.

61.     CMC's unfair or deceptive acts or practices, as described above, were willful or knowing within the meaning of M.G.L. c. 93A, §§ 2 and 11.

## COUNT VII

## Violation of the Lanham Act – Fraudulent Registration (17 U.S.C. § 1120)

62.     Jenzabar restates and re-alleges all of the allegations contained in Paragraphs 1

through 25 of its Complaint and Paragraphs 1 through 61 of this Counterclaim as if fully set forth

herein.

63.     CMC fraudulently misrepresented to the PTO that their CAMPUS

MANAGEMENT CORP marks, including the generic and merely descriptive "campus

management" language, were distinctive and that their use had been exclusive in order to

overcome a descriptiveness rejection and to gain trademark registration.

64.     Jenzabar has been irreparably harmed as a result of CMC's fraudulent registration

of their CAMPUS MANAGEMENT CORP marks as the '722 and '702 Registrations.

## PRAYERS FOR RELIEF

**WHEREFORE, Jenzabar prays that the Court:**

1.  Enter judgment for Jenzabar and against CMC in each of the Counterclaim counts

above;

2.  Enter judgment declaring that Jenzabar has not and is not infringing U.S. Trademark

Registration Nos. 2,965,722 and 3,259,702;

3.  Enter judgment declaring that U.S. Trademark Registration Nos. 2,965,722 and

3,259,702 are invalid, void and unenforceable, and cancelling the registrations;

4.  Enter an order temporarily and permanently enjoining the defendants, their officers,

agents, representatives, servants, employees, attorneys, successors and assigns, and all others in

active concert or participation with the defendants, from asserting, representing or alleging that

Jenzabar or any of Jenzabar's customers, employees or agents has infringed and/or is now

infringing U.S. Trademark Registration Nos. 2,965,722 and 3,259,702, and from threatening

Jenzabar or any of Jenzabar's customers, employees or agents with trademark infringement litigation because of Jenzabar's use of the TOTAL CAMPUS MANAGEMENT mark;

5.   Enter an order declaring that Jenzabar has the right to carry out the conduct that has been accused by CMC of trademark infringement without any interference from CMC, its agents, employees, attorneys, licensees and related companies;

6.   Award Jenzabar damages against CMC in an amount to be determined at trial;

7.   Award Jenzabar its damages for CMC's violations of Mass. Gen. L. ch. 93A, trebled on account of CMC's knowing and willful conduct;

8.   Award Jenzabar its costs; interest; enhanced, special, statutory and/or punitive damages; and reasonable attorneys' fees, including those attorneys' fees to which Jenzabar is entitled pursuant to 15 U.S.C. § 1117 and Mass. Gen. L. ch. 93A; and

9.   Grant Jenzabar such other and further relief as this Court may deem just and proper.

## JURY DEMAND

JENZABAR, INC. demands a trial by jury on all issues so triable.

JENZABAR, INC.

By its attorneys,

/s/ Monica Rose Cafaro
Edward J. Naughton (BBO #600059)
Monica Rose Cafaro (BBO #672490)
BROWN RUDNICK LLP
One Financial Center
Boston, MA  02111
617.856.8200
enaughton@brownrudnick.com
mcafaro@brownrudnick.com

Dated:   April 28, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on April 28, 2009.

/s/ Monica Rose Cafaro
Monica Rose Cafaro (BBO #672490)

# 1649881 v1 - CAFAROMR - 027621/0003